# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **RANDI JONES AND TIM JONES,** | § | |
| **Individually and as Next Friends and** | § | |
| **Guardians of G.J., a Minor,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **Civil Action No.  4:14-CV-226** |
| | § | |
| **BUMBO INTERNATIONAL TRUST f/k/a** | § | **JURY DEMANDED** |
| **JONIBACH MANAGEMENT TRUST,** | § | |
| **And BUMBO PTY., LTD** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORIGINAL COMPLAINT

Plaintiffs Randi Jones and Tim Jones, Individually and as Next Friends and Guardians of G.J., a Minor, (collectively "PLAINTIFFS") hereby file this Original Complaint, and complain of Defendant Bumbo International Trust f/k/a Jonibach Management Trust, and Bumbo, Pty. Ltd. (referred to herein, collectively, as "BUMBO") as follows:

## JURISDICTION AND VENUE

1.    The present action alleges strict product liability, negligence, and bystander liability arising out of PLAINTIFFS' use of the BUMBO BABY SITTER.

2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

3.    The Court has personal jurisdiction over each Defendant.  Each Defendant has conducted and does conduct business within the State of Texas, as described more fully below. Each Defendant contracts with entities that do business within the State of Texas.  Moreover,

each Defendant, directly and/or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises the BUMBO BABY SITTER, in the United States, the State of Texas, and the Southern District of Texas.  Each Defendant has purposefully and voluntarily placed the BUMBO BABY SITTER into the stream of commerce with the expectation that it will be purchased by consumers in Texas. The BUMBO BABY SITTER has been and continues to be purchased by consumers in the Texas.  In addition, BUMBO has maintained continuous and systematic contacts with the State of Texas since 2003.  In particular, BUMBO's exclusive distributor, Wartburg Enterprises, was located in Conroe, Texas.  Because of this, BUMBO coordinated the October 25, 2007 recall campaign, which was instituted by the U.S. Consumer Product Safety Commission, from an office in Conroe, Texas.  As a result, BUMBO engaged in all of the following activities from Conroe, Texas: (1) corresponding with all of the retailers that sold the BUMBO BABY SITTER, (2) evaluating and selecting additional warning language for the BUMBO BABY SITTER, and (3) communicating with the CPSC regarding the terms of the recall campaign. BUMBO also imported around one million (1,000,000) BUMBO BABY SITTER SEATS into the United States via Wartburg Enterprises, in Conroe, Texas, from 2003 through 2010.  And, when BUMBO's relationship with Wartburg Enterprises ended, BUMBO sued Wartburg Enterprises in state and federal courts in Texas.  Further, on August 6, 2012, The Honorable Gregg Costa of this Court also found that BUMBO was subject to general personal jurisdiction in Texas in *O'Neal v. Bumbo (Pty.) Ltd. et. al*; Civil Action No. 6:11-cv-00072. BUMBO has exhibited absolute control over BUMBO BABY SITTERS in Texas in connection with product recalls initiated by the CPSC in 2007 and 2012. BUMBO deals in goods in Texas, by distributing the BUMBO BABY SITTER to distributors and retailers that sell the seat to users

in Texas. BUMBO also derives significant economic gain from its sale of BUMBO BABY SITTER SEATS in the United States, including specifically those sold in Texas, including the BUMBO BABY SITTER SEAT at issue.  The BUMBO BABY SITTER SEAT at issue was purchased by Randi Jones' mother, in Texas.  It was in Texas that PLAINTIFFS used their BUMBO BABY SITTER with their child, G.J., and it was in Texas that G.J. was seriously injured by the defective product.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## **PARTIES**

5.      PLAINTIFFS Randi Jones and Tim Jones, Individually and as Next Friends and Guardians of their daughter, G.J., a minor, are individuals who presently reside in and are citizens of Cypress, Texas.  PLAINTIFFS resided in Cypress, Texas at the time they received the BUMBO BABY SITTER, and they resided in Cypress, Texas at the time the injuries were first inflicted on PLAINTIFFS that are pertinent to this action.

6.      Bumbo International Trust f/k/a/ Jonibach Management Trust (now trading as Bumbo International) is a South African trust based in Gauteng, South Africa. All of the Trustees of Bumbo International Trust are citizens of South Africa. Bumbo International Trust f/k/a/ Jonibach Management Trust does not maintain a registered agent within the State of Texas despite selling thousands of products here.

7.      Bumbo Pty. Ltd., located at 212 Hardie Muller Street, Rosslyn, PO Box 3081 Rosslyn 0200, Gauteng, South Africa, is also South African entity based in Gauteng, South Africa.  Bumbo Pty. Ltd. does not maintain a registered agent within the State of Texas despite selling thousands of products here.

## FACTUAL ALLEGATIONS

8.     The BUMBO BABY SITTER is designed for use exclusively by infants. Specifically, the BUMBO BABY SITTER was designed and marketed "to seat babies independently in an upright sitting position from as young as 3 months up to an age of approximately 14 months . . . thereby providing a snug and cozy environment for your baby."

9.     The BUMBO BABY SITTER was actively marketed for use on elevated surfaces.  In fact, website photos depicting the BUMBO BABY SITTER routinely showed it being used on top of tables, countertops, and even on top of a piano bench.  And, the very box in which the BUMBO BABY SITTER was sold contained a picture of three infants sitting in BUMBO BABY SITTERS on top of a table, at a birthday party, with cake and balloons.  There are no adults anywhere in the birthday party photograph:



10.     The BUMBO BABY SITTER was also advertised as being "your extra set of hands," and was advertised as "promotes eye-level interaction."  Moreover, the BUMBO BABY SITTER was marketed as being safe to use "on any flat surface."  In fact, the following

photograph, which shows a mother feeding a baby on top of a table, was also on the BUMBO box, and appeared on websites advertising the BUMBO BABY SITTER for sale:



In fact, Antoinette Wagenaar, an officer, director and trustee of BUMBO, testified under oath that the BUMBO BABY SITTER was safe to use on any level surface, that passive restraints keep the children safely in place, and that it was okay to place an infant in the BUMBO BABY SITTER on a raised surface so long it was "within reach." In 2003, Bumbo began to sell the Bumbo Seat in the United States. Not long thereafter, in 2004, Bumbo received its first complaint that a child had fallen out and been injured.

**A.    The Consumer Products Safety Commission Recalled The BUMBO Baby Sitter on October 25, 2007.**

After receiving twenty-eight (28) reports of children falling out of BUMBO BABY SITTERS, including reports of three skull fractures, the U.S. Consumer Product Safety Commission (the "CPSC") recalled the BUMBO BABY SITTER on October 25, 2007. On that date, the CPSC issued a press release stating: "Serious Head Injuries Prompt Recall of BUMBO Baby Sitter

Seats - New Warnings and Instructions to Be Provided to Consumers."[1]  As part of the recall, the CPSC mandated that new warnings be placed on the BUMBO BABY SITTER and that the photograph of the birthday party be removed from the BUMBO BABY SITTER'S packaging because that photograph could lead consumers to believe that it was safe to use the BUMBO BABY SITTER on elevated surfaces. Although BUMBO begrudgingly complied with the recall that the CPSC forced on it, Bumbo made sure that consumers understood that BUMBO did not think that the recall was warranted or necessary by posting on its website that the recall was the "Lamest Recall in the History of the World."  BUMBO directed retailers (including Toys "R" Us, Target, Wal-Mart and Once Upon A Child) to remove the BUMBO BABY SITTERS from store shelves. BUMBO then told retailers, including how to re-work and re-label the BUMBO BABY SITTERS and their packaging with new warning labels and stickers that satisfied the CPSC's recall requirements.  BUMBO also told its retailers when they could begin selling the BUMBO BABY SITTERS again.

**B.    Children Continue to Be Injured After the Recall.**

11.    In spite of the October 2007 recall, and the changes that were made to the BUMBO BABY SITTER's warning language, children continued to be seriously injured while using the product.  In fact, as of May 2010, BUMBO was aware of more than 200 incidents where infants had come out of the BUMBO BABY SITTER.[2]  Recognizing that the recall measures had not stopped senseless injuries to children, in November 2011, four years after the initial recall, the CPSC issued a press release warning consumers that children were continuing to be seriously injured by the BUMBO BABY SITTER despite the added warning language and the removal of the birthday party photo from the box.  In fact, the CPSC's own news release

---

[1] See Exhibit A, a copy of the CPSC website press release concerning the recall.
[2] See Exhibit F, a table of customer complaints received by BUMBO.

shows more reported injuries from the BUMBO BABY SITTER after the recall than before.[3] Specifically, <u>after</u> the 2007 recall, there were at least 45 reports of children being injured by falling out of BUMBO BABY SITTERS that were being used on elevated surfaces – including 17 more skull fractures.  And, there were an additional 50 reports of infants falling out of BUMBO BABY SITTERS that were being used on the floor and other unknown elevations – including two reports of skull fractures on the floor, and one report of a concussion.  Clearly, the initial recall did nothing to alleviate the dangerous nature of the BUMBO BABY SITTER.  The ineffectiveness of the "warnings only" recall is plainly demonstrated by the fact that more children were injured after the recall than before.[4]

**C.    4,000,000 BUMBO BABY SITTERS are Recalled in August of 2012 so that a Seat-Belt Can be Added to Make the Product Safe.**

12.    In the face of continuing injuries to children, and the realization that new warnings had done nothing to prevent or even slow down injuries caused by the BUMBO BABY SITTER, on August 15, 2012, the CPSC announced that 4 million Bumbo Baby Sitter seats – which amounts to every single BUMBO BABY SITTER seat sold in the United States from 2003 through 2012 - were being recalled because a seatbelt had to be added to the product to make it safe.[5] The CPSC cited all of the incidents that had occurred since the October 2007 recall as the reason for the mandatory design modification. Per the 2012 recall, consumers with BUMBO BABY SITTER seats were required to stop using their BUMBO products immediately until they could obtain a seatbelt kit from BUMBO and install it on the BUMBO BABY SITTER.  In connection with this recall, BUMBO was responsible for notifying all of the retailers and ensuring that BUMBO BABY SITTERS were removed from store shelves until

---

[3] See Exhibit B, November 22, 2011 News Release from the CPSC.
[4] See Exhibit C, March 15, 2012 Article from the Chicago Tribune, "Grave Concerns about baby seat," by Julie Deardorff.
[5] See Exhibit D, August 15, 2012 News Release from the CPSC.

they could be properly retrofitted with a seatbelt.  In fact, BUMBO was adamant that the CPSC not announce the recall until BUMBO was sure that enough seatbelt retro-fit kits were available to handle those seats that were in the hands of the retailers.  Although it came more than 10 years later than it should have, the BUMBO BABY SITTER will, now, finally be equipped with a simple seatbelt that will prevent countless injuries to children.

**D.    <u>The Incident</u>**

13.    In 2010, the Jones Family received the BUMBO BABY SITTER fro Randi Jones' mother, who purchased the product in Texas.  The Jones Family used the BUMBO BABY SITTER without incident with their first child.  Then, a few months after their second child, G.J. was born, the Jones Family began using the Bumbo Seat with her.

14.    On February 1, 2010, G.J. was put into the BUMBO BABY SITTER seat and placed on top of the kitchen island where her mother, Randi Jones, was directly and carefully supervising G.J. and feeding her.  After Ms. Jones finished feeding G.J., she began playing with her at eye-level on the counter. G.J. was still in the BUMBO BABY SITTER SEAT. Randi Jones's use of the BUMBO BABY SITTER in this manner was the exact type of use of the BUMBO BABY SITTER that has been approved by BUMBO'S officers. Ms. Jones knocked over a glass that she had on the counter, containing iced-tea.  When she leaned over to throw a towel on the spill, G.J. - suddenly and without warning - flipped out of the BUMBO BABY SITTER onto the floor. As a result of her injuries, G.J. was rushed to Memorial Hermann Children's Hospital, where she was diagnosed with a skull fracture, a brain bleed and a concussion.  She received extensive medical treatment for her injuries.

**D.**    <u>**Randi Jones Witnessed the Incident.**</u>

15.    Randi Jones was next to her daughter when she fell out of the BUMBO BABY SITTER, and she witnessed the entire event. She suffered severe emotional distress from witnessing her daughter's serious injuries, which were readily apparent after the fall.

16.    At the time the Jones's received and used the BUMBO BABY SITTER, it was defective and unsafe for its intended purpose.  Specifically, the BUMBO BABY SITTER was designed in a manner that would allow a child such as G.J. to easily fall out of the seat. Moreover, the BUMBO BABY SITTER was marketed as being safe to use "on any flat surface." The BUMBO BABY SITTER was also marketed for use on elevated surfaces, such as a kitchen island or table.  The BUMBO BABY SITTER did not contain a safety harness or straps to hold G.J. in place. Plainly, the BUMBO BABY SITTER failed, seriously injuring G.J.

**D.**    <u>**Bumbo had Actual Knowledge that the Bumbo Baby Sitter was Defective and not Safe and that the Recall was Ineffective.**</u>

17.    By October 25, 2007, the CPSC had received twenty-eight (28) reports of serious injuries; yet by that time, Bumbo was aware of sixty-eight (68) reports of children falling out of the BUMBO BABY SITTER.  And, despite telling the world that the recall was "The Lamest Recall in the History of the World…"[6] Bumbo continued to receive reports of children falling out and injuring themselves.  In fact, by May 2010, Bumbo was aware of more than two hundred (200) reports of children falling out and/or injuring themselves, including more than one hundred complaints coming in after the 2007 recall.[7]  On November 22, 2011, the CPSC issued a press release stating that BUMBO was aware of at least 45 incidents in which infants fell out of a BUMBO BABY SITTER seat while it was being used on an

---

[6] See Exhibit D, a copy of an article posted on Bumbo's website on December 29, 2007.
[7] See Exhibit E, a table of customer complaints received by Bumbo between September 2004 and May 2010.

elevated surface after the October 25, 2007 recall.[8]  Among these incidents were 17 reported skull fractures to infants.  The CPSC also noted that BUMBO was aware of at least 50 reports of infants falling out of the BUMBO BABY SITTER while the product was being used on the floor and at unknown elevations.  Among these 50 incidents were two reports of skull fractures and one reported concussion, all three of which occurred while the BUMBO BABY SITTER was being used on the floor.

## CAUSES OF ACTION AGAINST BUMBO

### COUNT I
### STRICT PRODUCTS LIABILITY OF BUMBO –
### DESIGN DEFECT, MARKETING DEFECT, FAILURE TO WARN

18.    PLAINTIFFS incorporate herein the allegations of paragraphs 1 through 17.

19.    The BUMBO BABY SITTER in question was originally designed, manufactured, marketed, and sold by BUMBO.

20.    At the time that the BUMBO BABY SITTER was sold, BUMBO was in the business of designing, manufacturing, marketing, and selling BUMBO BABY SITTERS, such as the BUMBO BABY SITTER in question.

21.    BUMBO is the "manufacturer" and "seller" in question of the BUMBO BABY SITTER within the meaning of Section 82.001(4) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

22.    BUMBO is liable under the doctrine of strict liability for placing the BUMBO BABY SITTER in question into the stream of commerce and is liable for the injuries produced by the defects in the BUMBO BABY SITTER in question, including the injuries of PLAINTIFFS.

---

[8] See Exhibit B, a press release from the CPSC dated November 22, 2011.

23.    At the time that the BUMBO BABY SITTER was designed, manufactured, marketed and sold by BUMBO, it was defective in design and unreasonably dangerous as designed.

24.    There was a design defect in the BUMBO BABY SITTER at the time that it left the possession of BUMBO in that it was designed in such a way that would allow a child such as G.J. to easily fall out of the seat.  Moreover, the BUMBO BABY SITTER suffered from an additional design defect in that it did not contain a safety harness or seatbelt to prevent a child such as G.J. from falling out.  These defects, both singularly and in concert, rendered the BUMBO BABY SITTER unreasonably dangerous.  Further, these defects were a producing cause of the accident and injuries suffered by PLAINTIFFS.

25.    A safer alternative design existed at the time the Jones' BUMBO BABY SITTER was manufactured.  Specifically, BUMBO could have incorporated  a safety harness, seatbelt or other securing device into the BUMBO BABY SITTER that would sit low and tight across the child's hips.  An example of a safer alternative design that BUMBO could have incorporated  is as follows:



This, and possibly other design improvements, would have prevented a child like G.J. from falling out of the BUMBO BABY SITTER.

26.    At the time of the accident, the BUMBO BABY SITTER was in substantially the same condition as it was at the time it was placed into the stream of commerce.  PLAINTIFFS made no modifications to the BUMBO BABY SITTER at any time.

27.    There is no applicable mandatory federal standard that applies to the specific defects complained of herein.  But, to the extent that BUMBO attempts to rely on defenses or rebuttable presumptions that the BUMBO BABY SITTER was not defectively designed because it complied with all applicable Federal Standards, PLAINTIFFS allege that the Federal Standards are inadequate to protect children using the BUMBO BABY SITTER in a foreseeable manner.

28.    In addition, at the time that the BUMBO BABY SITTER was designed, manufactured, marketed and sold by BUMBO, it was defective and unreasonably dangerous because it lacked proper warnings.  BUMBO failed to warn consumers, like PLAINTIFFS, that there were numerous risks associated with using the BUMBO BABY SITTER on elevated

surfaces.   BUMBO actively marketed the BUMBO BABY SITTER for use on elevated surfaces without adequately warning consumers of the risks associated with using the BUMBO BABY SITTER in that manner.  BUMBO is strictly liable for this failure to warn because (1) there was a serious risk of harm associated with using the BUMBO BABY SITTER on an elevated surface, (2) BUMBO was actually aware of the risk associated with such a use, but it failed to adequately warn consumers of the risk of using the product in that manner, (3) the BUMBO BABY SITTER contained wholly inadequate warnings regarding the serious injuries that a child could suffer if the BUMBO BABY SITTER was used on an elevated surface, (4) the absence of the adequate warnings or instructions rendered the BUMBO BABY SITTER unreasonably dangerous to the ultimate consumer of the product, including PLAINTIFFS, and (5) BUMBO'S failure to adequately warn or instruct was a producing cause of PLAINTIFFS' injuries and damages.

### COUNT II
### NEGLIGENCE OF BUMBO

29.    PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 28.

30.    BUMBO committed acts of omission and commission, which collectively and severally constituted negligence, and which were a proximate cause of the injuries to PLAINTIFFS.

31.    BUMBO's acts of negligence include, but are not limited to the following:

(a)    Negligently designing the BUMBO BABY SITTER such that a child using the BUMBO BABY SITTER in a foreseeable manner could fall out;

(b)    Negligently designing the BUMBO BABY SITTER without a safety harness or seatbelt;

(c)    Negligently marketing the BUMBO BABY SITTER as safe to use on elevated surfaces;

(d)    Negligently marketing the BUMBO BABY SITTER by promoting its use on elevated surfaces;

(e)    Negligently marketing the BUMBO BABY SITTER by failing to adequately warn consumers of the risks and dangers associated with using the BUMBO BABY SITTER on elevated surfaces;

(f)    Negligently failing to test the BUMBO BABY SITTER to ensure that children using it in a foreseeable manner could not fall out and be seriously injured.

32.    At the time of the accident, the BUMBO BABY SITTER was in substantially the same condition as it was when it was placed into the stream of commerce. PLAINTIFFS made no modifications to the BUMBO BABY SITTER at any time.

## COUNT III
## BYSTANDER LIABILITY BY BUMBO

33.    PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 32.

34.    At the time of the accident, Randi Jones, G.J.'s mother, was located immediately next to G.J. and she witnessed her daughter's accident and resulting injuries. Randi Jones suffered severe physical shock and emotional distress from the direct emotional impact that occurred from her sensory and contemporaneous observation of her daughter's accident and resulting injuries. As such, Randi Jones is entitled to damages for the emotional distress and mental anguish that she suffered as a result of the accident and injuries to her daughter.

## PUNITIVE DAMAGES AGAINST BUMBO

35.    PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 34.

36.    In 2002, long before BUMBO began selling the BUMBO BABY SITTER in the United States, BUMBO was alerted to the fact that its product needed a seatbelt. In particular, in

2002, when BUMBO submitted the BUMBO BABY SITTER for testing to T.U.V. – an international testing agency – the BUMBO BABY SITTER failed its certification test because even though the product was designed to seat infants, it did not contain a seatbelt to ensure that its infant occupants were securely held in place. Rather than looking at ways in which to redesign the BUMBO BABY SITTER with a seatbelt, BUMBO ignored the unfavorable test result, and resubmitted the BUMBO BABY SITTER to T.U.V. for testing under the "toy" category, where the seatbelt requirement was removed from the testing parameters. As expected, the BUMBO BABYSITTER passed once BUMBO improperly categorized it as a "toy" and tested it as a baby rattle or stuffed animal would be tested, and not as an infant seat. BUMBO then began selling its product worldwide.

37.     BUMBO knew as early as 2004 that children were falling out of the BUMBO BABY SITTER. BUMBO also knew, as early as 2004, that in conjunction with its marketing of the BUMBO BABY SITTER, parents were using the product on elevated surfaces, such as tables and chairs, and BUMBO was also actually aware that children were falling from these elevated surfaces and suffering serious injuries. BUMBO continued to receive numerous complaints of this nature in the years that followed. In fact, as BUMBO'S sales of the BUMBO BABY SITTER increased, so did the complaints about the BUMBO BABY SITTER'S defects. At the time the Jones Family received their BUMBO BABY SITTER, BUMBO had received no less than 200 complaints of children falling out of the BUMBO BABY SITTER, including multiple reports of skull fractures and other serious bodily injuries.

38.     Despite having actual knowledge of the dangers associated with the BUMBO BABY SITTER, and direct personal knowledge that the BUMBO BABY SITTER was causing serious injury to children, BUMBO refused to undertake any effort to evaluate a re-design of the

BUMBO BABY SITTER to add a simple seatbelt to prevent children from getting out of it. This is despite the fact that BUMBO was actually aware of hundreds of incidents where children had fallen out and in many cases, were seriously injured using the BUMBO BABY SITTER. Had BUMBO effectively evaluated its design, warnings and/or marketing materials prior to PLAINTIFFS' use of the BUMBO BABY SITTER, PLAINTIFFS' injuries could have been prevented.

39.     BUMBO'S acts and omissions – failing to review, evaluate, and change its marketing and design of the BUMBO BABY SITTER - involved an extreme degree of risk – serious injury to children – and demonstrated a willful and wanton disregard for the rights and safety of others.  BUMBO'S conduct also deviated from the normal standard of care undertaken by a manufacturer of products intended for use by children.   BUMBO was aware of the probability that children would get out of the BUMBO BABY SITTER, and could be seriously injured.  BUMBO was also aware of the magnitude of the potential harm that children, such as G.J., were likely to suffer as a result.  At the time of G.J.'s accident, BUMBO was actually aware of the real likelihood that children such as G.J. could be seriously injured using the BUMBO BABY SITTER.  Despite this, BUMBO did nothing to reduce or prevent the injuries of G.J. and other children like her. As such, BUMBO was grossly negligent, and is liable for punitive damages.

## DAMAGES

40.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 39.

41.     PLAINTIFFS seek damages from Defendants arising from the injuries that G.J. suffered as a result of the accident.   Specifically, PLAINTIFFS seek damages for the following:

      (a)     Past and future medical expenses of G.J.;

      (b)     Past and future pain and suffering of G.J.;

      (c)     Past and future mental anguish of G.J.;

      (d)     Past and future disfigurement of G.J.; and

      (e)     Past and future physical impairment of G.J.

42.     PLAINTIFFS also seek damages from DEFEENDANTS arising from the emotional distress and mental anguish suffered by Randi Jones as a result of her witnessing her son's horrific and terrifying accident and resulting injuries.

43.     PLAINTIFFS also seek punitive damages from DEFENDANTS.

44.     PLAINTIFFS also seek pre-judgment and post-judgment interest as provided by law.

## **JURY DEMAND**

45.     PLAINTIFFS request a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, that this cause of action be set for trial before a jury, and that Plaintiffs recover judgment of and from Defendants for their actual damages in such amount as the evidence may show and the jury may determine to be proper, together with pre-judgment and post-judgment interest, costs of suit, punitive damages and such other and further relief to which Plaintiffs may show themselves justly entitled, whether at law or in equity.

Respectfully submitted,

**DATED:  January 31, 2012**          /s/ M. Ross Cunningham
                                      M. Ross Cunningham
                                      Attorney-in-Charge
                                      Texas State Bar No. 24007062
                                      Southern District of Texas Bar No. 34405
                                      **ROSE WALKER, L.L.P.**
                                      3500 Maple Ave., Suite 900
                                      Dallas, TX 75219
                                      Telephone: (214) 752-8600
                                      Facsimile:  (214) 752-8700
                                      rcunningham@rosewalker.com

Of Counsel:
Elizabeth M. Cunningham
Texas State Bar No. 24008069
Southern District No. 27809
**ROSE WALKER, L.L.P.**
3500 Maple Ave., Suite 900
Dallas, TX 75219
Telephone: (214) 752-8600
Facsimile:  (214) 752-8700
lcunningham@rosewalker.com

Adam K. Pulaski
Texas State Bar No. 16385800
**PULASKI & MIDDLEMAN, L.L.C.**
4615 Southwest Fwy, Suite 850
Houston, TX 77027
Telephone: (713) 664-4555
Facsimile:  (713) 664-7543
adam@pulaskilawfirm.com